FEB 03 2012  12-0396SAG

## AFFIDAVIT

Your Affiant, Evans Celestin, is employed as a Special Agent with the Drug Enforcement Administration and has been so employed since September 2007. Your Affiant is currently assigned to the Drug Enforcement Administration's Baltimore District Office Heroin Task Force. Your Affiant received nineteen (19) weeks of formalized training at the Drug Enforcement Administration Training Academy in Quantico, Virginia. Your Affiant received instruction on packaging, pricing, importation methods, source cities, and trafficking methods of CDS violators. Additionally, your Affiant has received training in informant handling, debriefing of CDS violators, and training in the area of surveillance and counter surveillance. Your Affiant also received extensive legal instruction regarding the Controlled Substance Act, Fourth Amendment search and seizure, and execution of search warrants. Since becoming a Special Agent, your Affiant has participated in approximately 100 controlled purchases of heroin, MDMA, cocaine and crack cocaine. This involved providing informants with governmental funds, determining locations and persons from which to make controlled purchases, seizing the heroin and debriefing the informant after the purchase. Your Affiant also worked in an undercover capacity in purchasing heroin and crack cocaine and a vehicle used to facilitate the transport of illegal narcotics.

As a Special Agent, your Affiant has participated in the execution of numerous search and seizure warrants pertaining to controlled dangerous substances. As a result, your Affiant was involved in the seizure of heroin, marijuana, crack cocaine, cocaine, and packaging materials. After the execution of these warrants, your Affiant participated in debriefing of individuals suspected of involvement in drug trafficking. During these debriefings, your Affiant became

1

familiar with brand names and jargon used amongst drug dealers. In Addition, your Affiant has testified in Grand Jury on a number of occasions and as a result, the Grand Jury returned True Bills and the defendants were indicted federally.

Prior to employment with the Drug Enforcement Administration, your Affiant served as a federal police officer with the Uniformed Division of the United States Secret Service for over six (6) years. During that time, your Affiant was primarily assigned to the White House branch, the Emergency Response Team, and the Special Operations Division. Your Affiant received twenty-six (26) weeks of training at the Federal Law Enforcement Training Center and United States Service Basic School in Beltsville, Maryland. Additionally, your Affiant received eight (8) weeks of training at the Emergency Response Basic School and twelve (12) weeks of training at the Tactical Canine School.

I submit this affidavit in support of an Application authorizing the search and seizure of the following cellular phones:

- A) Brown Motorola, Model I465, cellular telephone bearing IMEI number 001700468609840;

- B) Black boost mobile Motorola, cellular phone bearing HEX MEID number A0000022B2401D1; DEC MEID number 268435459411681821

- C) Brown/Silver Motorola, Model Number I776 bearing IMEI number 001705643108810;

- D) Black Motorola tracfone cellular phone (Black) IMEI 011803005604438;

- E) AT&T Samsung cellular phone (Black), IMEI Number: 012233008735501;

- F) AT&T Iphone cellular phone (Black), IMEI number: 01242700560607

2

The above-referenced cellular phones were seized from **Jeff GIBBS** (hereinafter **GIBBS**) incident to his arrest on March 10, 2011 and are currently in the custody of the DEA Non-Drug Evidence Custodian vault. **GIBBS** has been indicted by a federal grand jury, Criminal Case No. CCB-11-0114, with conspiracy to distribute and possess with the intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and a 1000 pounds or more of marijuana all in violation of 21 U.S.C. §846.

This affidavit is based upon your affiant's knowledge, expertise, and information provided to your affiant by other law enforcement officials involved in this investigation. Since this affidavit is being submitted for the limited purpose of executing a search and seizure warrant on the above-mentioned cellular telephones, it is not intended to include each and every fact known to your affiant or the Government. Your affiant has set forth those facts necessary to support probable cause.

### Probable Cause

1. On October 1, 2011, members of the DEA-Baltimore Group 52 and Baltimore City Police Department Violent Crime Impact Section initiated a T-III wiretap investigation involving **GIBBS**, Shawn JOHNSON (hereinafter JOHNSON), Christopher WRIGHT (hereinafter C. WRIGHT), Donald WRIGHT (hereinafter D. WRIGHT), Kevin MOBLEY (hereinafter MOBLEY), Tarad PAYNE (hereinafter PAYNE), Tetoria MCNEELY (hereinafter MCNEELY), Dana BOWMAN (hereinafter BOWMAN), Gerard MUNGO (hereinafter MUNGO), David PARKER (hereinafter PARKER) and others. The investigation revealed that the aforementioned individuals operated and conspired in a vast drug trafficking network that involved the Baltimore metro area, Maryland.

2. As part of the investigation, law enforcement officers applied for and received authorization to intercept cellular telephone calls over the aforementioned individuals' phones.

3. As a result of the court authorized wiretaps, numerous calls were intercepted between **GIBBS** and C. WRIGHT, **GIBBS** and D.WRIGHT, **GIBBS** and MOBLEY, **GIBBS** and MCNEELY, and **GIBBS** and PAYNE. In the intercepted calls, all the individuals discussed the sale and distribution of narcotics, as well as payment for the narcotics.

4. During the investigation, agents intercepted calls where **GIBBS** was directing and conspiring with individuals to transport bulk marijuana that were shipped to designated locations in the Pennsylvania area from mailing companies such FedEx. The following intercepts details the methods of their distribution:

On January 05, 2011, at 2:09 p.m., MCNEELY received an incoming phone call, **(L-1501)**, on cellular phone number **443-721-5409** (**"L-Line"**) from 202-374-2493, a cellular number used by Jeff **GIBBS**. This is the transcribed call:

| | |
|---|---|
| McNeely: | Yo. |
| GIBBS: | Aeh you talk to Fat Boy yo? |
| McNeely: | Earlier. |
| GIBBS: | Early...oh (inaudible) the other phone must be off. |
| McNeely: | Yeah...I holla at him earlier. |
| GIBBS: | Oh aight...so what's up we good for tomorrow? |
| McNeely: | Yeah...I mean what ever you...you wanted to use. |
| GIBBS: | See what we can do man...what you want man...see what you want (inaudible). |
| McNeely: | Well ah...what about the ah...one around the corner from Cottage, you don't like that one? |
| GIBBS: | The what? |
| McNeely: | The...the...the other dude, remember by the school? |
| GIBBS: | Just...just let them know...just, what ever you think just let them know and we'll see from there. |
| McNeely: | Aight. |
| GIBBS: | Aight. |

On January 05, 2011, at 2:11 p.m., MCNEELY made an outgoing phone call, **(L-1502)**, to 717-881-7593, utilized by a person known as "Julius." This is the transcribed call:

4

| | |
|---|---|
| Unknown Female: | Hello? |
| McNeely: | Hello is Julius around? |
| Unknown Female: | No he's at a job site working right now. |
| McNeely: | Oh okay okay okay, when he get in can you tell him give me a call please. |
| Unknown Female: | Sure, can I tell him who it is? |
| McNeely: | Tedo. |
| Unknown Female: | Okay. |
| McNeely: | Thank you. |

During these calls, **L-1501**, and **L-1502**, your affiant believes that McNEELY and **GIBBS** are talking about the shipment of CDS from the west coast to locations in southern Pennsylvania. Your affiant believes that McNEELY, using the nickname of "Tedo", attempts to contact an individual named "Julius" to arrange a shipment of narcotics, and have "Julius" receive the CDS for McNEELY and **GIBBS.**

On January 05, 2011, at 4:01 p.m., MCNEELY made an outgoing phone call, (L-1519), to 717-599-6709, utilized by a person Pedro PABON. This is the transcribed call:

| | |
|---|---|
| Pedro: | Yo. |
| McNeely: | What happened yo why didn't you send it? |
| Pedro: | My bad, my bad yo what happened what's up? |
| McNeely: | You don't need no money? |
| Pedro: | Yeah yeah yeah. |
| McNeely: | Ah right then send it to me then yo, you procrastinating and shit man. |
| Pedro: | Ah right man hold on. |
| McNeely: | Uh? |

Your Affiant believes based on their training, knowledge and experience in CDS investigations that based on this call, as well as toll records showing text messaging between McNEELY and PEDRO before this call that were not intercepted, that McNEELY and PEDRO were in contact in regards to a shipment of CDS. Your affiant knows based on this investigation, that PEDRO arranges for several people in the southern Pennsylvania region to accept shipments of CDS for money. PEDRO would then relay the address to McNEELY for pick-up. This call shows that PEDRO was ordered by McNEELY to text McNEELY the location the package of narcotics was to be shipped to in Pennsylvania.

On January 05, 2011, at 4:47 p.m., MCNEELY made an outgoing phone call, **L-1533**, to 202-374-2493, utilized by Jeff **GIBBS**. This is the transcribed call:

5

GIBBS: Tedo.

McNeely: Hey we got options we got Faggey Boy, Baby Girl, and Couz.

GIBBS: Oh ah right, ah right, ah right, so I'm going to try to decide which one. You heard me?

McNeely: Yeah.

GIBBS: I'm going to try to decide which one.

McNeely: Hey you know we supposed to get some snow.

GIBBS: When?

McNeely: Thursday, Thursday night.

GIBBS: Oh word?

McNeely: Yeah.

GIBBS: Oh okay, where you at?

McNeely: I'm right by my way for real.

GIBBS: You're around your way?

McNeely: Yeah.

GIBBS: Oh shit. I need some fucking boots too man. I need some fucking boots.

McNeely: Uh.

GIBBS: Ah right so a matter of fact this I going to decide which one I'm going to do.

McNeely: Ah right.

GIBBS: Ah right.


On January 05, 2011, at 5:50 p.m., MCNEELY made an outgoing phone call, **L-1536**, to 202-374-2493, utilized by Jeff **GIBBS**. This is the transcribed call:

GIBBS: Yo.

McNeely: Yo what you going to do buddy?

GIBBS: When I talk to them again.

McNeely: Which one you want I got, got three on deck.

GIBBS: (Inaudible)

McNeely: Uh?

GIBBS: Hold on, hold on.

McNeely: Yo.


On January 05, 2011, at 5:53 p.m., MCNEELY received an incoming phone call, **L-1539**, from 202-374-2493, a cellular number used by Jeff GIBBS. This is the transcribed call:

McNeely: Yo.

6

GIBBS: Yo.

McNeely: Yeah.

GIBBS: Now what you got um Faggey Boy and who?

McNeely: I got Faggey Boy, I got my little cousin baby mother, and you know Shorty already on deck.

GIBBS: Which one we ain't rock with.

McNeely: We ain't did, we ain't did cousin and shit in a while.

GIBBS: You talking about in the regular shit right?

McNeely: Yeah, you know we got to play with brown right there.

GIBBS: Ah right, ah right, ah right, cool, I'll do Cousin cool.

McNeely: Ah right I'm going to send it to you.

Your Affiant believes based on their training, knowledge and experience in CDS investigations that based on these calls, **L-1533**, **L-1536** and **L-1539**, McNEELY and **GIBBS** discuss the different people and locations that McNEELY has arranged to be prepared to receive shipments of narcotics from an express mail source, UPS or Fedex. As these calls go on, McNEELY and **GIBBS** discusses the history of the people that they are using by referencing "in a minute" which your affiant believes show that this has been an ongoing operation for some length of time. Based on the last call, **L-1539**, **GIBBS** makes the final decision on which location the shipment goes to, showing that he clearly is one of the leaders of the narcotic distribution organization in Baltimore.

5.  On February 19, 2011, DEA group 52 conducted surveillance in York, Pa at 501 S. Duke Street, based on the ongoing Title III intercepts over Tetoria MCNEELY (L-Line). Agents observed a FedEx delivery of Drug Exhibit #15 (approximately 20 pounds of marijuana) to 501 S. Duke Street, and then carried away from the location by MCNEELY into a 2008 BMW. As MCNEELY and J. KNIGHT traveled towards Baltimore, Pennsylvania State Troopers conducted a traffic stop on the vehicle, and driver, KNIGHT. PA State Troopers recovered Drug Exhibit #15 from the trunk, after a positive K-9 alert, and search warrant execution by the Troopers. MCNEELY and KNIGHT were arrested on state drug charges at this time. MCNEELY was transporting the Exhibit at the direction of **GIBBS.**

7

6. In late February 2011, **GIBBS** traveled to San Diego to meet with his marijuana suppliers, including co-defendant Raymond WILLIAMS. On March 1, 2011, law enforcement agents observed **GIBBS** meet with WILLIAMS and travel to a residence at 11717 Joyas Court in San Diego, California. This location is a known packaging and distribution location for WILLIAMS' marijuana trafficking organization. Law enforcement agents subsequently intercepted text messages between **GIBBS** and WILLIAMS in which the two arranged for a package of marijuana to be shipped to a location in Pennsylvania. WILLIAMS texted a FedEx tracking number to GIBBS. On March 8, 2011, law enforcement agents seized the package with the corresponding tracking number from a FedEx distribution location. The package was being shipped from San Diego, California to a location in Pennsylvania. A K-9 alerted to the package, which was opened and found to contain approximately 15 pounds of marijuana.

7. On March 10, 2011, numerous State search and seizure warrants were executed by members of the DEA, the Baltimore City Police Department, and the Baltimore County Police Department on the locations where **GIBBS** and his co-conspirators resided. During a search incident to arrest of **GIBBS**, which was at 7948 Galloping Circle, Windsor Mill, Maryland, agents located and seized six cellular phones from **GIBBS** master bedroom, two cellular phones from the center console of his vehicle (gold Acura bearing Maryland registration tag 8EKE47) that was parked in the garage of his residence, and three cellular phones from the kitchen counter. It should be noted that the aforementioned vehicle was observed multiple times driven by **GIBBS** during the investigation facilitating his illegal drug activities. Agents also seized $9000.00 in suspected drug proceeds from **GIBBS** master bedroom.

7. Based on my training, knowledge, and experience, I know that drug dealers routinely utilize cellular telephones to facilitate their drug distribution operations. Further, drug dealing is an ongoing process that requires the development and use of a secure communication network to facilitate daily drug distribution. Drug dealers use cellular telephones to maintain contact with one another, their customers, and drug suppliers. I am aware from prior experience that many cellular telephones have an address/phonebook feature allowing the bearer to store names and telephone numbers in the phone's memory. The undersigned is also aware that many cellular telephones incorporate a Caller ID feature to capture and store the telephone number of incoming calls. I am aware from prior experience that analysis of the names and telephone numbers contained in cellular telephones are very useful to law enforcement and provide valuable evidence concerning the scope of drug organizations and their methods of operation. I am further aware that cellular telephones often have a camera feature which allows that user to take and store digital photographs. Based on my training and experience in narcotics enforcement, I am aware that drug dealers often take photos of themselves, their associates, their property and illegal contraband. Such photographs could assist in identifying other individuals involved in narcotics trafficking and providing evidence against those already charged. I am also aware from prior experience that drug dealers often utilize multiple cell phones in an effort to mask their activities and avoid police detection.

8. Based on the aforementioned facts, I believe that there is probable cause that the seized cellular telephones have been used in furtherance of illegal drug activities in violation of 21 U.S.C. §846. Further, there is probable cause to believe that names, telephone numbers, stored numeric and/or text messages, and photographs previously transmitted to and/or stored on the seized telephone may identify other individuals involved in violations of federal narcotics laws. Therefore,

I am seeking authorization to search, access, and retrieve any and all stored electronic information contained therein, including but not limited to the internal telephone book directory, all incoming, outgoing and missed calls; all numeric, voice, and text messages; all photos and videos; and any other information contained in the aforementioned cellular telephones, seized from **GIBBS** incident to his arrest on March 10, 2011, and currently in the custody of the DEA Evidence Custodian vault located in Baltimore, Maryland, all of which constitute fruits, evidence, and instrumentalities of violation of 21 U.S.C. §846, namely conspiracy to distribute crack cocaine, powder cocaine, and heroin, all controlled substances.

I, Special Agent Evans Celestin, affirm under penalties of perjury that the facts and circumstances recounted in the foregoing affidavit are true and accurate to the best of my knowledge.

_____
Evans Celestin
Special Agent
Drug Enforcement Administration
Signed to and sworn before me this 20th day of January, 2012.

_____
Hon. Stephanie A. Gallagher
United States Magistrate Judge